AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
*Jan 19, 2025*
Nathan Ochsner, Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br>Jose Santana Lopez<br>and<br>Jose Luis Guadarrama<br><br>*Defendant(s)* | Case No. 2:25-MJ-0040 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 17, 2025__ in the county of __Brooks__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 554<br><br>and | for any person to fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States. |
| 18 U.S.C. Section 2 | Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael E. Dail, Special Agent, ATF
*Printed name and title*

Submitted by reliable electronic means, sworn to, signature attested telephonically per Fed. R. Crim. P.4.1 and probable cause found this 19th day of January, 2025.

Date: __01/19/2025__

City and state: __Corpus Christi, Texas__

_____
*Judge's signature*

Jason B. Libby, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Michael E. Dail, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), a Division of the United States Justice Department, assigned to the Corpus Christi Field Office and have been so employed since October 27, 2019. As a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, I have graduated from the Federal Law Enforcement Training Center and the ATF National Academy. I am vested with the authority to investigate violations of Federal laws, including Titles 18, 22, and 26, United States Code.

2. I am familiar with certain Federal criminal laws and know that it is a violation Title 18 U.S.C. § 554: for any person to fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

3. Further I know the Arms Export Control Act (AECA), 22 U.S.C. § 2778, regulates the exportation of "defense articles," including firearms and firearm parts. The articles subject to AECA control are listed under various categories in the State Department's U.S. Munitions List contained in the regulations in 22 CFR 121.1. Firearms and component parts of firearms are listed under Categories I and II. Category I covers nonautomatic and semi-automatic firearms to include .50 caliber (12.7 mm), as well as fully automatic firearms to .50 caliber inclusive. This category also covers silencers, mufflers, sound and flash suppressors, and rifle scopes manufactured to military specifications.

4. This affidavit is in support of a criminal complaints charging Jose Santana LOPEZ, hereinafter referred to as "LOPEZ", and Jose Luis GUADARRAMA, hereinafter referred to as "GUADARRAMA", with the criminal violation set forth in this affidavit. The evidence available to me demonstrates there is probable cause to believe LOPEZ and GUADARRAMA have violated Title 18 USC § 554.

5. On January 17, 2025, at approximately 7:45 pm, your Affiant spoke with Texas Department of Public Safety (DPS) SA Julio Trevino regarding a traffic stop by a DPS Trooper.

6. On February 17, 2025, at approximately 5:45 pm, DPS Trooper Antonio de la Vina, accompanied by Trooper Tejeda, conducted a traffic stop of a Jeep, gray in color, bearing Texas License Plate (TXLP) PSG1432 but missing the front license plate. Troopers conducted the traffic stop on Highway 281 near mile marker 740, approximately 2 miles

before the Brooks' County and Hidalgo County line, south of the Falfurrias Border Patrol Check Point. Troopers found the vehicle occupied by the driver, LOPEZ, and the passenger in the front seat, GUADARRAMA.

7. During the stop, Troopers noticed the smell of marijuana and conducted a search of the vehicle. During the search, Troopers observed that the registration sticker of the Jeep did not appear to match the displayed license plate. When Troopers conducted a check of the registration by the vin number, it was found the Jeep should have had TXLP SSV5277 and was reported stolen from Waelder, Texas.

8. Troopers then discovered a substance found to suspected to be "crystal meth". LOPEZ admitted to the Troopers that the "meth" belonged to him. Troopers took LOPEZ into custody for the possession of methamphetamine. LOPEZ also made statements to the Troopers that he uses "meth" regularly and is "addicted" to it.

9. During the arrest of LOPEZ, Troopers found an empty holster in the waistband of LOPEZ. LOPEZ informed Troopers there were two weapons behind the glove box. Troopers only found one firearm; a purple in color firearm identified as a SCCY Industries, Model CPX-2, 9x19mm, pistol, SN: C522547. The firearm was found with a magazine and 10 rounds of 9x19mm ammunition. There were three additional magazines near it that are for Taurus pistols. No Taurus firearms were recovered during the search.

10. Because Troopers could not find the second firearm, Troopers made the decision to move the stop to the Falfurrias Border Patrol Check Point to use the x-ray machine at the check point to confirm what LOPEZ stated. On the way to the check point, LOPEZ told Troopers that there were firearms were in the spare tire.

11. At the check point, Troopers could not locate a second firearm behind the glove box of the Jeep but did confirm there were firearms, in plastic firearms cases, inside the spare tire mounted on the rear of the Jeep. Troopers removed the spare tire and used a "sawsall" to cut the side wall of the tire and remove the firearms. Each plastic case had a different firearm, magazines for that firearm and some ammunition of the appropriate caliber for that firearm.




12. The firearms were identified as follows:

   a. One (1) Glock, Model 19Gen5, 9x19mm, pistol, SN: AHFN725. The firearm was recovered in a Glock brand plastic case with three magazines and 50 rounds of loose 9x19mm ammunition in it.

   b. One (1) Walther, Model P22, .22 LR caliber, pistol, SN: WA504643. The firearm was recovered in a Kel-Tec brand plastic case, marked for a Kel-Tec, Model PF-9 pistol. Inside the case with the firearm was one magazine and 11 rounds of loose .22 LR ammunition.

   c. One (1) Beretta, Model M9, .22 LR caliber, pistol, SN: BM062889. The firearm was recovered in a Walther brand plastic case, marked for the above-listed Walther pistol with SN WA504643. Inside the case with the firearm was two magazines and 51 rounds of loose .22 LR ammunition.

   d. One (1) Ruger, Model Security 380, .380 Auto caliber, pistol, SN: 387-85297. The firearm was recovered in a Kel-Tec brand plastic case, marked for a Kel-Tec Model P17 pistol. Inside the case with the firearm was two magazines and three boxes, totaling 150 rounds, of .380 Auto ammunition in factory original boxes.

   e. One (1) Walther, Model P22, .22 LR caliber, pistol, SN: WA504643. The firearm was recovered in a Kel-Tec brand plastic case, marked for a Kel-Tec, Model PF-9 pistol. Inside the case with the firearm was one magazine and 11 rounds of loose .22 LR ammunition.

13. LOPEZ and GUADARRAMA were interviewed at the Falfurrias Check Point initially by DPS SAs Trevino and Rene Guerrero. LOPEZ was interviewed first.

14. SAs Trevino and Guerrero conducted the Miranda Warnings to LOPEZ again. During interview, LOPEZ claimed to have recently purchased the firearms at an Academy Sports and Outdoors in Austin, Texas. LOPEZ had placed the firearms in the tire because he knew GUADARRAMA is not allowed to be near firearms because he is a felon. LOPEZ stated that the vehicle was going to Mexico. LOPEZ claims he was going to take the firearms back to Dallas with him. Prior to ending the interview, LOPEZ admitted to being a meth user and had even used meth earlier that day.

15. SAs Trevino and Guerrero then interviewed GUADARRAMA, beginning with conducting Miranda Warnings to GUADARRAMA again. GUADARRAMA said he was picked up by LOPEZ in Austin and went with LOPEZ to the Academy Sports and Outdoors. He did not know LOPEZ had that many firearms in the vehicle and was wanting a ride back home to Mexico where his family is.

16. GUADARRAMA stated that the plan for LOPEZ and GUADARRAMA was to wait in Donna, Texas, until the morning and then take the Jeep across the border to Mexico during the day when it is safer. GUADARRAMA also stated that LOPEZ had tried to sell GUADARRAMA a .22 caliber pistol in Mexico previously.

17. Following the interviews of LOPEZ and GUADARRAMA, your affiant arrived at the Falfurrias Check Point. After looking at the recovered firearms, vehicle, and speaking with the on-scene Troopers and DPS SAs, Your affiant with SAs Trevino and Guerrero re-interviewed GUADARRAMA and LOPEZ with your affiant present.

18. GUADARRAMA was re-interviewed first. Your affiant conducted Miranda warnings again prior to questioning and GUADARRAMA agreed to speak with your affiant. During the second interview, GUADARRAMA stated that he met LOPEZ in Mexico. Their kids attend the same school in Mexico. GUADARRAMA reconfirmed that the vehicle was to go to Mexico and LOPEZ and GUADARRAMA would take the Jeep into Mexico.

19. GUADARRAMA messaged LOPEZ on facebook for a ride back to Mexico because he had been sick and wanted to go home. LOPEZ picked him up and they went to Academy and then Walmart. GUADARRAMA stated that he saw LOPEZ leave with a white cardboard box about the size of a pistol and had tucked it under a jacket.

20. GUADARRAMA admitted that he is a convicted felon and knows he is not supposed to be around firearms. GUADARRAMA claims to have not seen a firearm until the traffic stop.

21. During GUADARRAMA's interview, LOPEZ informed Trooper de la Vina that only 5 of the pistols were his. The above-described Beretta pistol was not his. LOPEZ also said that GUADARRAMA had something in his shoe. This information was relayed to SA Trevino. SA Trevino asked GUADARRAMA who eventually admitted that he did have something in his right shoe.

22. GUADARRAMA claimed that LOPEZ gave it to him to hide and then removed two items from shoe which GUADARRAMA said was marijuana and cocaine. GUADARRAMA reaffirmed that he did not know about the firearms and knows he is not allowed to have them. GUADARRAMA also stated that the firearms were purchased by LOPEZ. GUADARRAMA stated they do not regularly travel across the border together.

23. During interview GUADARRAMA consented to the search of his phone, filling out a consent to search form and showed SAs the Facebook messages of GUADARRAMA and LOPEZ along with some photographs of injuries he received from cartel members in Mexico. Nothing in the messages showed a plan to traffic the firearms. Your affiant took custody of the phone and placed it into evidence in the ATF vault.

24. Following the interview, Trooper Tejeda informed your affiant that GUADARRAMA's phone had its GPS on and was giving directions to the Donna Port of Entry.

25. LOPEZ was then interviewed by your affiant with SAs Trevino and Guerrero. LOPEZ received his Miranda warnings from Your affiant and agreed to speak with SAs. LOPEZ said he has known GUADARRAMA for almost 15 years.

26. LOPEZ stated he bought the firearms and that is not a crime. LOPEZ transports vehicles to Mexico as the way he makes money. He began by delivering care packages to Mexico from their American side of the family and it evolved to transporting vehicles.

27. LOPEZ stated he was taking the Jeep to Donna where someone else would pick up the Jeep and drive it into Mexico. LOPEZ said he was never planning on going to Mexico and had no plans to visit his family in Mexico on this trip. LOPEZ claimed only five (5) pistols as his, and that the Beretta was GUADARRAMA's. LOPEZ planned to take his pistols back to Dallas with him where he had another vehicle to pick up and bring to the border.

28. LOPEZ also changed his story from speaking with the Troopers saying he only claimed the "meth" because it was on his side of the car and suggested that the drugs were all GUADARRAMA's just like they were found in his shoe. LOPEZ eventually conceded he has taken meth previously to stay awake while driving vehicles south.

29. Your affiant questioned by LOPEZ would conceal his firearms in the spare tire. LOPEZ stated he did so to keep the firearms from GUADARRAMA because he is a felon. LOPEZ could not explain why LOPEZ took GUADARRAMA's Beretta (recovered in the Walther box that matches the Walther pistol LOPEZ claimed) and hid it in the spare tire with his items. LOPEZ also could not explain how he was going to get back to Dallas with his firearms suggesting just renting a car or traveling by bus back to Dallas.

30. LOPEZ repeatedly stated that he is allowed to purchase firearms and that he can have firearms.

31. LOPEZ was informed that everything he was stating would be compared to what would be found in his phone. LOPEZ consented to having his phones searched. LOPEZ had two phones, an iPhone 13 and a Samsung. LOPEZ gave the passcode to his iPhone 13. As your affiant asked for the information to access the Samsung phone, LOPEZ stated he wanted a Lawyer prior to completing the consent to search form. The interview was terminated.

32. Your affiant took custody of the six (6) firearms, the two hundred eighty three (283) rounds of ammunition, and the three cell phones and placed them into the ATF vault located at the ATF Corpus Christi Field Office.

33. Prior to transport to be booked into the Coastal Bend Detention Center in Robstown, Texas, LOPEZ informed a Trooper he wanted to speak to your affiant. Your affiant opened the door to the Trooper's vehicle and LOPEZ wanted to know what he was being charged with. Your affiant informed LOPEZ that LOPEZ and GUADARRAMA would be charged with 18 USC § 554.

34. LOPEZ asked why GUADARRAMA was being charged. Your affiant explained that based on both people heading to Mexico in a vehicle with firearms hidden from discovery that both would be charged. LOPEZ stated that he placed the firearms inside the tire. Your affiant reminded LOPEZ of his statement that the Beretta pistol was GUADARRAMA's and that pistol was hidden with LOPEZ's firearms inside the tire. LOPEZ then said he would claim all six pistols before muttering something in audible. Your affiant ended the conversation and closed the Trooper's vehicle door.

35. Troopers de la Vina and Tejeda transported LOPEZ and GUADARRAMA to the coastal bend detention center, where LOPEZ and GUADARRAMA were taken into federal custody pending criminal complaint.

36. Your affiant knows from training and experience that individuals engaged in the trafficking of firearms and ammunition and their exportation from the United States will often recruit other individuals to purchase firearms on their behalf to evade law enforcement detection.

37. Your affiant knows from training and experience that individuals engaged in the trafficking of firearms and ammunition, or the trafficking of persons or contraband will secret the trafficked items to hide them from detection by law enforcement.

38. Your affiant, who has been trained in the identification and origin of firearms and ammunition, knows that the firearm and ammunition were all made outside the state of Texas and that the firearm was made after 1898, and thus affect interstate commerce. The ammunition was also made outside the state of Texas after 1898 thereby affecting interstate commerce.

39. Based on the above information, your affiant believes Jose Santana LOPEZ and Jose Luis GUADARRAMA did attempt to export or send from the United States,

an object contrary to the law of the United States, and attempted to buy and conceal to facilitate the transportation, of these objects, prior to exportation, in violation of Title 18 United States Code § 554; to wit, LOPEZ and GUADARRAMA were transporting six (6) firearms and two hundred eighty three (283) rounds of ammunition to Mexico, having travel from Austin to south of the Border Patrol Check Point in Falfurrias when discovered during a traffic stop on January 17, 2025, in Brooks County, Texas.

Further the Affiant sayeth not.

_____
Michael E. Dail, ATF Special Agent

Submitted by reliable electronic means, sworn to, signature attested telephonically per Fed. R. Crim. P.4.1 and probable cause found this 19th day of January 2025.

_____
Jason B. Libby
United States Magistrate Judge